Good afternoon. My name is Chris Benson. I represent BMC. So you know, BMC is also known as Bill Matrix Corporation, formerly known as Telebit. With me is my partner Jeff Mills and Mr. Scott Walker, the CEO of BMC. Legal issues today are two. One, whether or not joint infringement requires the direction and control by the party who's being accused of infringement. And that's to be reviewed day and night. The second issue is whether the district court bears in assessing the record evidence and determining that there was no infringement. Would your theory of joint infringement render inducement and contributory infringement absolutely void and unnecessary? Absolutely not. All that one would need to allege is that a party performed one of many steps of a method and somebody else did the rest. I don't believe that's the case. Induce when you want. All right. Well, under inducement, a party can induce someone to perform acts of a, or steps of a method, but never have performed one step of that method. So there's no need. A party can be held to induce someone to perform the steps, but not having ever performed one of the steps. So inducement would still pertain. So in other words, the joint infringement would do away with inducement every time there was one step performed by the alleged inducer. I don't believe that. The thing that we're looking at here is under on-demand. And I think on-demand requires participation in combined activity. And if someone… On-demand isn't binding on this court. It's a little dicta and another opinion. So stick with the difficulty we have dealing with the statute, which says whoever infringes, up to now infringement has always meant that someone, someone, has to perform each and every step of the claimed method. Well, I believe that if you do a statutory analysis and look at the who of the who infringes, you're looking at whoever. And whoever is, if you look at the dictionary definition and you look at other portions of the statute, including whoever invents, whoever means whatever persons, person or persons, not just one person. So the joint invention, if you look at, that's been analyzed substantially. More than one person can invent a particular invention. Likewise, if you have whoever without authority… But here on infringement, we've got something different going on, don't we? We have strict liability, a strict liability tort. So we're not into any proofs of intent. And therefore, if you have joint infringement, I can be made liable without even my knowledge because my two colleagues have performed two more steps of something that I performed one step of, right? I think that might be the case. But I think that on-demand does give us at least some instruction. If not, I believe it's binding on… That's pretty disturbing, isn't it, that I'm going to be held liable because somebody else proceeds beyond any agency or authority I gave them? I thought I was simply performing one step that I performed forever. That is… One firearm step and they met it. That's right. But, Your Honor, you know that under 271A, a person without knowledge whatsoever of the patent can be sued for patent infringement and they can be put out of business having no idea that what they're doing is wrong. Yeah, but at least they've performed each and every step of the claim method. In this instance, I'm doing what I've always done, a prior art step that is part of a combination, a new combination method, and because my colleagues do the rest of it, I am jointly liable for a business-ending liability? Well, it might be business-ending in my event. But in any event, the thing is 271A is a strict liability for it. But isn't it disturbingly? It's disturbingly. It's disturbing only comes up in the context of this joint liability. That is one of these great horribles that have been… Couldn't you avoid this by careful drafting? Other claims? I think that you'd have to contort claims. No, I'm not talking about contorting them. I think you could have drafted this claim to avoid the problem. Well, that everything ran through one party. They either sent or received the information and the processing and directed or received direction throughout the whole matter. Couldn't you have done that? They may have been able to do that. It wasn't done here, and I don't believe it's necessary. In the NTP case, it's clear… The potential problems of the strict liability tort that you and I just talked about, we've got the problem of outlawing most forms of inducement, contributory infringement. Why wouldn't this court say, if you can solve all those problems simply with adequate claim drafting, that that's what you ought to have done rather than restructure the old patent act? Well, I think that it goes beyond that. You're going to go beyond this case. Maybe you could have… No, we're not going beyond this case. This case we're dealing with. Okay. Well, the thing is, you're asking me whether or not claim drafting is going to solve this problem, and it not necessarily will. You want in a patent to have a public notice function. You want people to know what steps should be performed in what manner. And by focusing just on one participant, that's not necessarily a clear statement of what the invention is. If you say A is going to be step one… No, but the public notice function is to put the potential infringer on notice. I think your joint infringement theory is going to put me in jeopardy for my one step that is then made infringement by my colleagues without public notice, whereas a proper claim drafting job would have put the single party on notice of their potential liability, wouldn't it? No, not necessarily, because this is a distributed system. The patent is public notice to all those persons out there that act in this particular business area here about bill payment processing. And those persons looking at it, they'll see that there's an invention for pinless debit, and it involves these three parties, the debit network, the processor, and the merchant. Those parties have to be related in some manner or form, and I'm asking, contractual or agency relationship? No. I think that if you look at back under 271 cases, if there's any agency or contractual relationship, typically you're going to put the steps of an act on someone else. This goes beyond that. I don't believe that that's necessary. I think all that's necessary is that these parties participate together to get that combined result of infringing the patent. That's all that's necessary. Well, finally, though. Right. Well, we've done all 10 steps of the method of claim separately and distinctly. Are we infringing the claim? Fortunately, we're not that case. No, no, I understand that. And it depends. Are you working together? Are you participating together? No, we're working independently. That's a difficult decision. I think 271A may cover that. On what basis? Whoever being whatever persons or persons, whichever person or persons without authority practices the infringement. But I won't be practicing three steps. But you're doing... Whatever happens after that, I really don't know what happens in the marketplace. Believe me, this is a difficult question. I understand it, but... Is Judge Dias your liable for all of the damages? Under, if we look at on-demand, yes. Why shouldn't Judge Crookston be liable if she is producing the final judgment? It's joint in several liabilities under on-demand. It's joint in several liabilities where the parties are working together. They're participating together to perform the steps of this particular process. Like they are in this case. Everybody's got to get some benefit out of it. They're working together. The whole thing was set up in advance. Are there any contractual arrangements between the parties? There's contractual relationships between Payment Tech, which is what we call the processor, and the debit networks. And there's also contracts between Payment Tech and their particular merchant customer. But between the processor, excuse me, between the merchant and the debit network, there is a qualification that goes through them. But not a contract? I don't believe there's a contract. In other words, your participation in combined action tests would not require a contractual arrangement? That's right. As long as you're working together. If you put something like artificial means like a contract on it, then people won't contract and they'll just work together and they'll perform the steps of the method and the patent will be infringed. If we don't have this sort of remedy, a lot of these patents that are out there right now won't be enforceable. They won't be worth anything. And in our system as we have it today, you've got distributed computer systems. The NTP case is a prime example. There are at least five different participants that would have to, when you receive and send a Blackberry message, in the claims in that case, where that's a great invention, right? We wouldn't be able to enforce that patent. I'm not talking about the Canadian issue, but we're talking about there's five different people that do something in that process to get that email message from one person to another. And we would render that patent useless. And virtually everybody in this room has got a Blackberry. I don't think we have a problem there because they're all acting as agents for one overriding single infringer. In other words, there is the agency principle there that has united their activities into one. So we can find one corporate actor, a single actor, which has coordinated the activities of others. That's not what you're suggesting to us. You're saying I'm liable for performing step one without any knowledge or participation in their step two and three. In this case, RFAS, I'm saying we can get to where you want to be. I don't want to be anywhere. All right. What I'm trying to get at is this, is that under your situation, we have that here. We have Paymentech working with their merchant customers, getting them set up, having them prompt the customer to get the information. But the bank is just responding to a request for is there money in the account? They're not. They have no knowledge whatsoever. And yet Bank of America, that might be the deepest pocket. You're going to sue them first, maybe. And all they're doing is just saying, yeah, there's money in the account. That's not all they're doing. They're part of your – well, that we could dicker with the details. The point is in this claim or some other claim, the activity could be that narrow, and you would find them infringers. Under 271A, if whoever means whatever person or persons, then you may very well be right. But again, our case doesn't go that far, and I believe that on-demand pertains. We're talking about the participation of these entities who work together in this case to infringe on my penalty. What would be inventory for us enforcing the dicta in on-demand? Do you agree it's dicta? No, I do not agree it's dicta. If you look at on-demand, there's three – Was there any analysis at all in on-demand of the implications of joint infringement? No. But if you look at on-demand, it's – And was there a finding of joint infringement? No, there was a finding of no infringement, but in the – It was a claim construction issue, and it was even the jury instruction in that case was cited in the context of claim construction, wasn't it? I don't believe so. If you look at where the jury instruction is cited in on-demand, you've got three sections. You've got a background section, you have a discussion section, and you've got a conclusion section. In the discussion section, this court went through, I believe, three separate terms and interpreted what those meant. And then in that context, they looked at what the – Infos, I think it's Lightning Source, excuse me. In the context of Lightning Source's conduct was their infringement, and every time they looked and they concluded that there was not. In the second claim analysis where they talked about the computer, they talked about maybe they used May with respect to Amazon. You go to the conclusion, which is section three. That is where the court does its analysis on joint infringement. There it talks about whether or not Amazon with Lightning Source together, whether or not they infringed the patent. And then the – or excuse me, this court looked at the jury instruction and said we discern that instruction is not – there's no flaw in that instruction. It's a statement of the law. And then it went on with its analysis from that point saying that even when Amazon works with Lightning Source, there is no – And were they discussing in detail the implications we've discussed today? No, they did not. No, they said however. I mean, after they said we discern no flaw in this instruction. I agree. I agree. However, the fundamental precept, and they go on to decide the case on another basis. I don't believe so. I believe what they did was the court was looking at whether or not together Amazon and Lightning Source would infringe the patent. They had to first determine whether or not joint infringement was a viable theory. They did that by blessing the jury instruction, and then they went from that point on and said even when Amazon and Lightning Source work together, not all of the claim elements are met. But was there a necessary element of their holding? I think it was a preliminary and necessary holding because if there was no such thing – How did they decide the case on that particular issue? They decided the case – first they had to say is there joint infringement? And they said yes, there's joint infringement. And then they analyzed the Lightning Source and Amazon ads to determine whether or not the combined ads equal direct infringement. And they found that because of, in particular, not having – giving consumers access to a computer because that element was missing, there was no infringement. Just one question. With regard to your particular theory then, would the cardholder who initiates all of the steps be also an infringer? I believe that the elements of the claim start with prompting, and those steps are done by the merchant. Well, prompting, the cardholder gives the card to the merchant, and the merchant then uses the card to start the process. Is that all? This is done over and over. Is the customer also involved in that? If – Part of the infringement? Possibly. In certain situations, they could be. That's a pretty extensive theory of infringement. I don't believe so. I think that in this day and age, because of our distributed computer systems, we've got to cover these sorts of inventions. It's just like the guy plugs in the e-mail message on the Blackberry system, and it goes from one to the next. Thank you, Mr. Benson. Of course, cutting to your rebuttal time, we're going to restore that. And if you could give Mr. Cronin an additional six minutes, if he needs to use it, then we'll have evened the time out. Just a second, Mr. Cronin. Thank you. You may proceed. May I please report? It is a fundamental rule of patent law that in order to infringe a patent, you have to take all the elements of the patent of the claim. Fewer than all the elements, a single element or fewer than all the elements, are just not afforded exclusivity by the patent company. That is the law. It has always been the law. What BMC is seeking today is a radical change in that position. BMC would make each person who performs a single step of a patent liable for the entire infringement. But it's also fundamental in patent law that you can't avoid liability on a method claim by having someone else perform one or more steps for you. Yes, Your Honor. I was going to reach that, and I'm going to reach it now. That is exactly right. There are cases where the court has said, although the defendant did not do that step itself, it cannot avoid responsibility for infringement by contracting that out, by paying someone to do it for you. And I don't argue with that. A corporation always acts through an agent, Your Honor. It may be an employee. It may be an independent contractor. So when you're advocating the direct and controlled standard, is that a standard in contracting agency? I believe it does. And I think this court's decision is safe. Your Honor, if Your Honor recalls the cross-medical case relatively recently, where there was an invention to do with supporting a spine in surgery, and the defendant, the medical company, sold the device. But the claim included engaging the spine, the device, with the spine. And the court observed that the medical company did not do that. If anyone did it, it was the surgeons. And certainly, the court said, surgeons are not the agents of medical device. So I think it is agency. That is what this court has looked for. They've looked to see whether there is a reason under the law to hold one person responsible for the acts of the other. That is why the three of you practicing your chemical invention that Judge Gaharza mentioned are probably not going to be liable because you are not acting as each other's agents. The way that the BMC wants to change the law would allow each person who manufactured a device that is later used by somebody else and put into combination that it may infringe upon. That person would be independently liable for the entire infringement. That is not the law. It should not be the law. Does this court have to go on bond to reach your result because of the on-demand case? I agree with your observation, Your Honor, that in on-demand, that reference to the jury instruction was by no means a part of the decision of the court. The decision was that even if you did aggregate everything, there was no infringement because some of the steps of providing a computer was just not there on any aggregation. Clearly, in a case like this, you could decide either that it is improper to aggregate or even if aggregated, there is no infringement. I'm sure a court would take one step, which is the most clear to it. But in that case, it was quite unnecessary for the court to approve or disapprove that jury instruction. Just not part. Now, earlier, this court in the Fromsen case had held that where the seller of some printing plates that were the claimed plate and the claimed method of making the plate involved several steps. One of which was coating the plate with a light sensitive layer. And the court said, with respect to this, it is the customer who coats the plate with the light sensitive layer. In that case, the plate manufacturer himself who does not do that cannot be a direct infringer. Now, that was a clear ruling by this court. That if you do not perform all the steps, then you do not infringe the patent. And that's a method plate as well as a glory plate. But the steps are performed on my behalf, though. I don't know what you mean exactly, Your Honour, by on your behalf. I mean, everybody in the Fromsen case, unless the customer was going to do those later steps, they would not have bought the product in the first place. And therefore, it would not have benefited the manufacturer. Well, in the Folsom case, is that because the additional steps were separate and distinct rather than being performed? For a manufacturer, A, for instance, has a widget, and the widget is then sent to a paint factory to paint it blue. And the patent requires a blue widget under the claim. And the two steps are performed separately. Would they still be infringed? Aside from the product, just the two steps. I don't think they would be, Your Honour. And I don't think this court wants to get into some analysis of modern-day commerce based on how fast that it works. I mean, in our case, the steps are definitely performed separately. We perform one step, somebody else performs another step, a third person performs a fourth step, and a fourth person performs a fifth step, and so on. They are separate. But as Mr. Benson pointed out, there is a contract among some of the products. Between some of the parties, but they're always. In the case of Fromsen, there was a contract between the manufacturer and the customer, even if it was only a contract for sale. There was certainly a contract, as the law recognizes that term, Your Honour. There's always going to be that type of relationship. I think the problem with this is the very breadth of what is being put out here. That it would have all sorts of unintended consequences, such as people being liable for an act that they have no idea constitutes infringement of a patent. There's no way of knowing that it would make them liable for a patent because they have no idea what is being done elsewhere by somebody else that they don't control. At least if your agent does the other act, you control it. You know what they're doing. You can say don't do that or do do that. When you're just at arm's length with somebody else who's also doing their normal business, because these people are each doing their normal part of normal business operation, how would you ever know whether you could infringe? So you make inducement, infringe. Infringement should be limited to an agency principle relationship? The inducement, Your Honour? Yes. No, I think that 271B and C are separate. They are not strict liability faults. You have to show that there was a direct infringement, and then you have to show that you intended to cause that in the inducement. I don't have any quarrel with that subsection of the act. I have a quarrel with the B and C's attempt to totally expand the reach of direct infringement. 271A. Yes, Your Honour. Thank you. Just to cover the subject on inducement, wouldn't it really be a situation where you could cover, once you've established direct infringement, you could cover it by induced infringement type of analysis? If there was an intent here to perform a particular function. Your Honour, certainly if that is the evidence, then it might be that there would be a finding of inducement. We say that here there was no intent on our part to induce, for example, Verizon, which is one of the people who is involved in this, to perform the steps that are set out and required, namely the prompting for an account number, the prompting for a payment number. We don't mind, we don't care what Verizon does. We just need a message from them which contains particular information, how they collect it. We don't care. It doesn't matter to us. And so, Your Honour, that I think is true for the banks as well. And you've still got to have, never mind our intent, you've still got to have a predicate act of direct infringement before we can be held liable for inducement. It's not, there's not a separate sort of inducement offense. It's an inducement of direct infringement, which is the offense. And here, in this circumstance, you don't ever get a direct infringement. And I agree with Judge Rader that this could have been avoided by simply drafting the claim in a way that focused on one of the participants. I think it was perfectly possible to do that. And certainly, having looked at the file history, we know that they didn't even try to do it. There is really no evidence. They keep saying, oh, it's going to be terrible for everybody if we don't throw away quite a number of years of infringement theory and allow us to sue everybody in the world who practices any one step of a combination claim. There's no evidence of that, Your Honour. If they want to change the law, I would suggest respectfully that the place for them to do that is not in front of this court but in front of the legislature. You know, you mentioned Verizon. My recollection is correct. The district court judge here seemed to focus on the financial institutions and the debit networks. Yes, I think that's absolutely right. Which I wondered about. No, I think that's right, Your Honour, because we have essentially no connections. We have no connections with the financial institutions and we have really very rote connections with the debit networks. We had a lot more connection with Verizon because they were the ones who we had the primary commercial relationship with. And so the judge said, well, there's all sorts of things going on maybe between Verizon and Payment Tech. So I don't want to hang my hat on that. I don't want to say that what you do with Verizon is not enough on summary judgment evidence to say that you're not responsible for what Verizon. Maybe you are, maybe you aren't. It probably would require a trial because there's all sorts of factual disputes about it. But I can be sure that you don't have any direct connection with the banks and you don't have any connection that I think is sufficient under a directional control standard with the networks. And that, I think, is why the opinion focuses on banks, the financial institutions and the networks as opposed to Verizon. Your Honor, Mr. Benson referred to the parade of horribles. I think it's always been suspicious of floodgate arguments. I'm sure the court is too. But there are all sorts of problems that arise if you allow a situation to arise where one person is responsible for the entire infringement even though they've only performed part of the invention. And that is different from these other cases that have gone before. The agency cases that you mentioned, Judge, are different. The principal is liable. The principal is deemed to have done every act even though it delegated an act to somebody else. But the law deems that person to have done all the acts. And the principal is liable, not the agent. Not the agent who performed one step. They're not liable. Mr. Benson wants to make everybody liable. Mr. Benson says not only the principal, but the agent who performed one of the steps on behalf of the principal, they'd all be liable. And they'd all be liable for the same thing. And what does that mean in our case? Well, it means that we would need to seek contribution in forms of damages from the merchants, from the networks, who've all performed steps in this, and from the banks. Although there are thousands of banks that issue credit cards and debit cards. These are very severe problems. And it's why this is not just a slight variation on a thing. This is a major departure in the infringement law which you're being asked to make. We don't perform all the steps. It's really not disputed that we only perform the steps. What does it perform? Payment tech, Your Honour. Payment tech receives a message from... This is a situation where, as the claim says, Mr. Benson keeps talking about debit cards. But as you'll read the claim, they all say debit or credit cards. So it receives... You have a merchant who wants to get a bill paid. And it encourages its customers to call into a telephone number and say, You can pay your bill over the telephone using a credit or debit card. The customer calls the 1-800 number, is prompted by one of these voice systems to enter information. I understand how the system works. What does payment tech provide within that particular system? We provide a connection to the networks. Each of the networks has slightly different rules as to what information has to be there, how it has to be presented. It's more than the average merchant wants to know. You provide the hardware and software? We provide... We don't provide the hardware. Well, we provide our own hardware. We don't provide any real hardware. I know, Your Honour, to the merchants. They have their own hardware. They've been doing this sort of telephone bill paying for some time. We don't provide that. We tell them what format their computer has to output a message in. And when we get it, we look at it, we do some reformatting. Clearly, I'm not going to pretend I understand exactly what we do. And then we send it on to the networks. The networks look at it, check it, send it to the particular financial institution. I think that is correct. Well, when we send it, then we get it back. Well, the receipt comes back. Yes. Once it goes into the network, Paymentech has no connection at all. Paymentech has no connection with what the network is going to do. We don't control them. We don't tell them how to decide whether or not to approve a request. That's not what we do. No, I think I've made the point. You were kind enough to give me some extra time, but unless the court has more questions. Thank you, Mr. Thompson. Thank you, sir. The court restored your four minutes of public time. Thank you. You may proceed. Your Honor, if you look at it, we've made additional arguments in addition to our joint infringement arguments. We say that the district court erred because the district court failed to appreciate the evidence and understand it under the direction or control standard. Under the direction and control standard, in its brief, Paymentech states at page 47, Second, although the data is a stimulus on which the ATM networks and banks act, it does not constitute control or direction of those parties sufficient to provide a basis for imposing liability. The reason I'm saying this is that there is definitely evidence that Paymentech directs and controls these transactions. And the district court already found that there was a question of fact on direction and control of the merchants. On the debit network side, there is substantial evidence that Paymentech directs that. Now, we're talking about a transaction. So Paymentech gets the information from the merchant, determines whether or not it's debit eligible, validates the debit card, then reformats the transaction and sends it on to the debit network. And then the debit network acts on it. Now, we've got evidence. But beyond that, they don't take the next step until it comes back, right? What they're doing... Their connection is to the debit network. Yes, they're having the debit network effectively do these steps of determining whether or not sufficient funds are available and then the debiting and crediting. And then the information goes back to Paymentech. Paymentech looks at it, sees whether or not the steps have been performed. Then they send that on to the merchant and say the transaction is completed or not. We believe there's substantial evidence of direction and control, and we put that in. For instance, Mr. Patterson, our expert, in pages 64 to 69 of our brief and in our reply 29 to 30, we talk about the direction and control standard. And, by the way, the steps are performed by the same participants identified in the packet, that the debit networks do this, which is comprised of financial institutions, do this debiting and crediting and the adding and the charging. Now, the other thing is there's also basic misunderstanding by the district court, and we put this in our briefs as well, about what is a debit network. A debit network is a group of financial institutions. And if you look at Paymentech's brief, the financial institutions establish the debit networks to handle ATM. Page 19, the debit networks are these remote payment networks. They were appointed by financial institutions to handle these sorts of transactions. In the pattern, the pattern conflates the card, the debit networks, and the financial institutions, and that's at page 61, column 11, line 13 to 17. So there's a basic misunderstanding by the district court judge, I believe, on what a debit network is, and that's what led her to say that there's no connection between Paymentech and the financial institutions, when there is a direct connection, because in the context of this process, the financial institutions are the debit network. Okay, and then you can also look at Mr. Hayes' deposition. That's Mr. Hayes is the Paymentech expert. He says the debit networks made up the financial institutions. He says that StarPulse and Nice have connectivity to these banks. Those are at A3372-3 and A3415. Now, finally— Are you arguing at this point that there must be a connection for infringement? No, I'm just saying that under— You're just saying that the facts of this case give you some connection. That's correct. I see that my time is up, but if I can mention one thing. Sure. A1376 is the ad that Paymentech puts out, and it says that Paymentech forwards the transaction to the financial institutions through the debit networks. The court did not understand that relationship, and I believe that under any theory, whether it's directive control, the last person to do it, or under what I believe is a law on demand, there is at the very least a genuine issue of material fact as to whether or not there's infringement. Thank you, Mr. Benson. The next case is Reaping v. the Coastal Service. Thank you.